UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

M-I L.L.C.                                          CIVIL ACTION

VERSUS                                              NO: 06-5730

MASSE CONTRACTING, INC.                             SECTION: J(2)

**ORDER AND REASONS**

Before the Court are cross-motions for partial summary judgment filed by both Plaintiff and Defendant in this matter, namely, Defendant Masse Contracting, Inc.'s ("Masse") **Motion for Partial Summary Judgment (Rec. Doc. 10)** and Plaintiff M-I L.L.C. d/b/a M-I SWACO's ("M-I") **Motion for Partial Summary Judgment (Rec. Doc. 17)**.

Both Masse's and M-I's motions, which are opposed, were set for hearing on the briefs on February 6, 2008 and March 5, 2008, respectively.  Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that both motions should be granted in part and denied in part.

**Background Facts**

This matter arises out of an accident that allegedly

occurred on or about October 19, 2003 aboard the ROWAN GORILLA III, a vessel owned by Rowan Companies, Inc. ("Rowan") and under charter to El Paso Corporation and El Paso Production Company ("El Paso").[1]  El Paso sought to drill a well off the coast of Louisiana.  In addition to contracting with Rowan to provide the drilling rig, El Paso also contracted with M-I to provide drilling mud services.  M-I then sub-contracted with Masse to provide additional workers to assist M-I.[2]  Patrick Johnson, an employee of Masse covered under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), allegedly was injured while working in this capacity on board the ROWAN GORILLA III.

Johnson filed suit against Rowan, El Paso, and M-I in Houston, Texas.  Rowan and El Paso made demands for contractual defense and indemnity on M-I based upon the agreement between El Paso and M-I,[3] who in turn made demand on Masse for contractual

---

[1]  Rowan and El Paso entered into an Offshore Day Work Drilling Contract – U.S. which required Rowan to furnish the drilling vessel, i.e., the ROWAN GORILLA III.

[2] There was no contractual relationship between Masse and El Paso or Masse and Rowan, as Masse only had a contract with M-I. The Master Work Agreement which Masse and M-I entered into governed the work being performed aboard the ROWAN GORILLA III.

[3] The applicable contract between El Paso and M-I is an Offshore Master Service Contract between M-I and El Paso's predecessor corporation, Coastal Oil & Gas Corporation.  In addition to the demands for contractual defense and indemnity, El Paso and Rowan further called upon M-I to reimburse El Paso and Rowan for the attorneys' fees and costs that each party incurred in the Johnson litigation in Texas in accordance with the indemnification terms of the agreement between M-I and El Paso.

defense and indemnity on its own behalf, and on behalf of Rowan and El Paso, pursuant to the Master Work Agreement entered into between Masse and M-I.  Masse accepted M-I's defense and indemnity, reserving the issue of M-I's attorneys' fees,[4] but denied the tender by M-I of Rowan and El Paso's defense and indemnity.

The Johnson lawsuit in Texas was settled with Masse paying $190,000 on its own behalf and on behalf of M-I, and M-I paying $60,000, of which $30,000 was on behalf of Rowan and $30,000 was on behalf of El Paso.  M-I then initiated this lawsuit seeking indemnity against Masse since Masse could not be made a party to the Texas lawsuit as it works exclusively in Louisiana and Mississippi.

In its motion, M-I seeks a ruling on the following matters: 1) Masse must indemnify M-I for the money it paid to settle the claims of Johnson on behalf of El Paso and Rowan, which was $30,000 each, for a total of $60,000; 2) Masse must indemnify M-I for the attorneys' fees incurred by El Paso and Rowan pursuant to the Johnson litigation which M-I has already paid to El Paso in the amount of $58,000 and which M-I has agreed to pay Rowan in

---

[4]  The issue of M-I's defense and indemnity, including indemnification of M-I's fees and costs, is not before the Court in Masse's motion.  However, M-I in its motion seeks a ruling requiring Masse to indemnify M-I its own attorneys' fees and costs that it incurred in the defense of the Johnson litigation, as well as the fees and costs M-I incurred in assuming the defense of El Paso and Rowan.

3

the amount of $34,981.75; and 3) Masse must indemnify M-I its own attorneys' fees and costs it incurred in the defense of the Johnson litigation[5] as well as the fees and costs M-I incurred assuming the defense of El Paso and Rowan.

### The Parties' Arguments

Masse seeks dismissal of M-I's claims seeking indemnification on behalf of Rowan and El Paso on the grounds that 33 U.S.C. 905(b) voids the indemnity obligation from longshore employers (such as Masse) to vessel owners (such as Rowan**)** and charterers (such as El Paso) which M-I seeks to enforce against Masse.  In other words, Masse argues that M-I's contractual indemnity claims are prohibited by 33 U.S.C. 905(b).

Both parties agree that there are no material issues of fact in dispute, as the matter is one purely of law, namely, whether Masse must provide indemnity for the claim made by its employee, Johnson.  There are two grounds by which the parties base their respective arguments deriving from the contract entered into between Masse and M-I: 1) outright indemnification via the indemnification provision, and 2) additional assured status via the insurance provision.

---

[5]  M-I incurred its own legal expenses prior to Masse's acceptance of M-I's defense, and afterwards in defending El Paso and Rowan.

4

## A.  Outright Indemnification

According to Masse, 33 U.S.C. 905(b)[6] prohibits
indemnification by the employer of a covered employee for a claim
due to bodily injury brought by an employee against the "vessel,"
including its owner and charterer.[7]  See <u>Diamond Offshore Co. V.
A&B Builders</u>, 302 F.3d 531, 541 (5th Cir. 2002).  Therefore,
Masse argues that since Rowan is the owner of the ROWAN GORILLA
III and El Paso the charterer, they are precluded from recovering
from Masse by virtue of section 905(b).

In opposition, M-I argues that Masse's refusal of the tender
of defense as to El Paso and Rowan violates the explicit
indemnification language of the Master Work Agreement as to M-I's

---

[6]  Section 905(b) of the LHWCA provides:

> In the event of an injury to a person covered under
> this Act caused by the negligence of a vessel, then
> such person, or anyone entitled to recover damages by
> reason thereof, may bring an action against such vessel
> as a third party in accordance with the provisions of
> section 33 of this Act, <u>and the employer shall not be
> liable to the vessel for such damages directly or
> indirectly and any agreements or warranties to the
> contrary shall be void.</u>

33 U.S.C. 905(b) (emphasis added).

[7] The term "vessel" is defined in the LHWCA to mean "any
vessel upon which or in connection with which any person entitled
to benefits under this chapter suffers injury or death arising
out of or in the course of his employment, and said vessel's
owner, owner *pro hac vice*, agent, operator, charterer or bareboat
charterer, master, officer or crewmember."  33 U.S.C. 902(21).

"customer" (El Paso)[8] and El Paso's business "invitee" (Rowan).[9]
The relevant language in the Agreement between Masse and M-I
provides in pertinent part:

> M-I shall not be responsible for, and to the extent
> allowed by law, contractor [Masse] shall release,
> indemnify, and hold harmless M-I and its Customers
> and its and their employees, invitees, and lessors
> ("indemnitees") from and against, any and all
> claims, demands, causes of action, liabilities,
> losses, costs, expenses, and fees (including,
> without limitation, attorneys' fees) in any way
> arising out of injuries to or death of Contractor
> [Masse], its sub-contractors or its or their
> employees . . . .

M-I acknowledges that actual indemnification language is
prohibited in contracts directly between the vessel owner and the
LHWCA employer under section 905(b).  However, the M-I/Masse
contract is not a contract between a vessel owner and the
longshore employer.  Rather, it is a contract between a service
company, M-I, and the employer, Masse.

Masse counters that M-I, the only plaintiff in this lawsuit,
cannot act as a conduit for Rowan and El Paso to recover
impermissible indemnity.  Simply because M-I must indemnify Rowan
and El Paso does not mean that Rowan and El Paso's indemnity can
flow through M-I to Masse without violating section 905(b).

---

[8]  M-I argues that El Paso is M-I's customer as El Paso also
contracted with M-I to provide drilling mud services.

[9]  M-I argues that Rowan is El Paso's "invitee" since El
Paso has the rights to drill the well at the location in
question, and invited Rowan as a business invitee to provide its
rig and services.

Section 905(b) explicitly precludes a vessel owner from recovering "directly or indirectly" from the longshore employer and that "any agreements or warranties to the contrary shall be void." 33 U.S.C. 905(b) (emphasis added).  Therefore, according to Masse, it does not matter what the Master Work Agreement states, because any agreement contrary to section 905(b) is void.

M-I responds that Masse, an LHWCA employer, waives its tort immunity under section 905(b) when contracting with a third party other than the vessel or vessel owner, such as M-I.  According to M-I, the Fifth Circuit has addressed this issue on several occasions, finding that when an LHWCA employer, which normally enjoys tort immunity under section 905(b), enters into an indemnity contract with a third party, such as M-I, then the LHWCA employer expressly waives the immunity protection of section 905(b).  See Tran v. Manitowac Engineering Co., 767 F.2d 223 (5th Cir. 1985) (stating that "this immunity [905(b)] may be waived by an indemnity contract with a third party other than the vessel owner"); see also Pippen v. Shell Oil Co., 661 F.2d 378, 386 (5th Cir. 1981) (ruling that suits for indemnity by third-party "non-vessels" are not "on account of" the employee's injury and thus not barred by section 905(b)); Olsen v. Shell Oil Co., 595 F.2d 1099, 1103 (5th Cir. 1979).  Therefore, while 905(b) prohibits direct indemnification between a longshore employer and a vessel owner in a contract between these two entities, the

Fifth Circuit recognizes that when the longshore employer contracts with a third party, it will honor that contractual indemnification language.[10]  See <u>St. Paul Surplus Lines v. Halliburton Energy Services</u>, 445 F.3d 820 (5th Cir. 2006).  As the language in the contract between M-I and Masse explicitly states that Masse agreed to defend, indemnify, and hold harmless M-I, its customers (El Paso) and its and their invitees (Rowan) for claims made by Masse personnel, the contract, according to M-I, should be enforced as written.

According to Masse, though, these cases cited by M-I do not apply to the instant matter as they do not address the issue of indirect indemnification of a vessel by an employer.  The cases cited by M-I simply generically address indemnification of non-vessels, rather than the indirect recovery argument raised by Masse.

**B.  Additional Assured Status**

According to Masse, the insurance provision on page two of its contract with M-I limited the requirement of naming

---

[10] In other words, section 905(b) expressly cuts off indemnity only to a "vessel"; the statute refers only to agreements between the LHWCA employer and the vessel owner, but not agreements with third parties.  Hence, according to M-I, if a third party seeks indemnity, then the statute is inapplicable allowing the third party to seek full indemnity, regardless of whether the indemnity language is direct or indirect as to a vessel owner.  Therefore, by contracting with M-I who was not the vessel owner, Masse waived any claim of tort liability under section 905(b).

additional assureds to only include "M-I, L.L.C., its
subsidiaries and affiliates . . . to the extent of the
liabilities assumed" in the agreement, meaning that the insurance
provision is not as broad as the indemnity language.  Because
neither Rowan nor El Paso qualify as a subsidiary or affiliate of
M-I, there is no obligation to name either Rowan or El Paso as an
additional insured.

In opposition, M-I refers to the contractual language on
page one of the contract requiring Masse (except for Workers'
Compensation) to "name M-I, and its customers and its and their
employees and M-I's lessors as additional insureds to the extent
of Contractor's [Masse] obligations hereunder."  According to M-
I, the Fifth Circuit has ruled that when an LHWCA employer agrees
to provide additional assured status to various parties,
including the vessel owner, then the LHWCA employer waives its
tort immunity under section 905(b).  In fact, the Fifth Circuit
specifically stated that neither the LHWCA nor its legislative
history suggests that additional assured clauses requiring an
employer to list a vessel owner as an additional assured are a
proscribed form of indirect liability under section 905(b).  See
LeBlanc v. Global Marine Drilling Co., 193 F.3d 873 (5th Cir.
1999); Voisin v. ODECO Drilling Co., 744 F.2d 1174 (5th Cir.
1984) (holding that section 905(b) does not invalidate an
agreement requiring an employer to list a vessel owner as an

9

additional assured); <u>Diamond Offshore Co. v. A&B Builders, Inc.</u>, 302 F.3d 531 (5th Cir. 2002).  Therefore, M-I and its customer, El Paso, are to be indemnified pursuant to the M-I/Masse insurance provisions which explicitly require Masse to "name M-I, and its customers" as additional insureds.

M-I acknowledges that the insurance provision does not refer to "invitees" (in this case, Rowan) as it does in the indemnity portion of the contract.  However, M-I argues that Masse is obligated to indemnify M-I for the defense of Rowan pursuant to the indemnification provision for the reasons listed above (namely, if a third party seeks indemnity, then section 905(b) is inapplicable allowing the third party to seek full indemnity, regardless of whether the indemnity language is direct or indirect as to a vessel owner).

In response, Masse acknowledges that the naming of additional assureds is permitted under section 905(b).  However, Masse states that the additional assureds provision does not apply in this matter as the contractual language is limited to the extent of valid indemnity obligations.  In other words, because Masse did not assume *any* liability to indemnify Rowan or El Paso, as such indemnity is precluded by section 905(b), then Masse does not have a duty to provide insurance coverage in connection with those claims.  As such, that portion of the claim relying on the naming of additional insured language should also

10

be dismissed, despite the fact that it is not prohibited by section 905(b).

## Discussion

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

The Fifth Circuit has held that when an LHWCA employer agrees to provide additional assured status to various parties, including the vessel owner, then the LHWCA employer waives its tort immunity under section 905(b). In fact, the Fifth Circuit specifically stated that neither the LHWCA nor its legislative history suggests that additional assured clauses requiring an employer to list a vessel owner as an additional assured are a proscribed form of indirect liability under section 905(b). See LeBlanc v. Global Marine Drilling Co., 193 F.3d 873 (5th Cir. 1999); Voisin v. ODECO Drilling Co., 744 F.2d 1174 (5th Cir. 1984) (holding that section 905(b) does not invalidate an

11

agreement requiring an employer to list a vessel owner as an additional assured).  The court in <u>Voisin</u> upheld the additional assured status even after finding the indemnification provision invalid.  744 F.2d 1174.  Furthermore, the <u>Leblanc</u> court upheld the additional assured status despite the fact that the additional insured provision in the contract in contained language which stated: "to the extent Subcontractor . . . assumes liability hereunder, and agrees to indemnify Contractor . . . Contractor shall be named an additional insured."[11]  <u>Id.</u> at 875.

Applying <u>Voisin</u> and <u>LeBlanc</u> to the instant facts, the contract between M-I and Masse states that Masse was to provide additional insured status to M-I and its "customers."  However, the contract contains no definition of "customer."  The jurisprudence has held that a customer . . . is "one who regularly or repeatedly makes purchases of, or has business dealings with another." <u>Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Services Co.</u>, No. 06-3043, 2007 WL 2874805, *2 (E.D. La. Sept. 26, 2007).  To show that El Paso is a customer of M-I (and thus entitled to indemnification through the additional assured provision) as M-I alleges, M-I must provide evidence of "arms-length dealings, a negotiated price for . . . services or

---

[11]  Therefore, <u>LeBlanc</u> forecloses Masse's argument that similar language in the M-I/Masse contract renders the additional assured provision unenforceable.

other indicia of a traditional customer relationship." <u>Nexen Petroleum</u>, 2007 WL 2811001, at *6.  M-I has failed to provide evidence of a contract creating a customer relationship between El Paso and M-I.  However, Masse has admitted that El Paso's contracting with M-I to provide mud services in the drilling of a well is an uncontested material fact.  Therefore, this Court determines that El Paso is M-I's customer and as a result, Masse must indemnify M-I for the money it paid to settle the claims of Johnson on behalf of El Paso.

The only remaining issue pertains to M-I's defense and indemnification of Rowan, the vessel owner.  The additional assured provision does not contain reference to "invitees" (which M-I argues includes Rowan) as it does in the indemnity portion of the contract.  To get around this problem, M-I relies on the indemnification provision in the M-I/Masse contract.  M-I argues that the Fifth Circuit has ruled that when a longshore employer contracts with a third party, it will honor the indemnification language in the contract as written.   Hence, according to M-I, if a third party seeks indemnity, then section 905(b) is inapplicable allowing the third party to seek full indemnity, regardless of whether the indemnity language is direct or indirect as to a vessel owner.

As such, by contracting with M-I who was not the vessel owner, M-I argues that Masse waived any claim of tort liability

13

under section 905(b).  Therefore, according to M-I, the contract
language should be enforced as written.  To this end, the
indemnification language in the M-I/Masse contract provided for
indemnification for M-I, its customers, and its and their
invitees.  Thus, since Rowan is an invitee of El Paso (at least
according to M-I), indemnification is owed to M-I in M-I's
assumption of the defense of Rowan in the Johnson litigation.

     The flaw in M-I's reasoning is that it seeks to allow Rowan
to do indirectly what it cannot do directly, namely, get
indemnified by Masse, the longshore employer.  The clear language
of section 905(b) states that "the employer shall not be liable
to the vessel for such damages directly or indirectly and any
agreements or warranties to the contrary shall be void." Gaudet
v. J. Ray McDermott & Co., Inc. is on point.  568 F. Supp. 795
(E.D. La. 1983).  In Gaudet, an injured longshoreman sued the
vessel owner, which filed a third-party demand against a platform
owner, which in turn filed a third-party demand for indemnity
against the employer of the longshoreman.  The court held that
although a non-vessel may bring an indemnity action against an
employer in contract where the non-vessel has caused or
contributed to the longshoreman's injury, the non-vessel cannot
obtain indemnity from the employer in order to indemnify a
vessel.  Id.  In other words, when a non-vessel seeks indemnity
from the employer in order to indemnify a vessel, the employer,

14

if required to indemnify the non-vessel, would be made indirectly
liable, not to the longshoreman, but to the vessel.  The court
reasoned that this is precisely what section 905(b) forbids.  <u>Id.</u>
As a result, this Court determines that Masse is not required to
indemnify M-I for the money it paid to settle the claims of
Johnson on behalf Rowan.

**III.  Attorneys' fees**

In its motion, M-I also seeks a ruling as to whether: 1)
Masse must indemnify M-I for the attorneys' fees incurred by El
Paso and Rowan pursuant to the Johnson litigation which M-I has
already paid to El Paso in the amount of $58,000 and which M-I
has agreed to pay Rowan in the amount of $34,981.75;[12] and 2)
whether Masse must indemnify M-I its own attorneys' fees and
costs it incurred in the defense of the Johnson litigation[13] as
well as the fees and costs M-I incurred assuming the defense of
El Paso and Rowan.

In opposition, Masse argues that M-I has submitted
insufficient evidence in support of its claim for attorneys'
fees.  M-I has only attached an affidavit which simply provides

---

[12]   As far as fees and costs, M-I alleges that El Paso
incurred more than $58,000 in fees and costs in the Johnson
litigation, but agreed to settle the outstanding attorneys' fees
and costs of El Paso with M-I for $58,000.  Rowan incurred
$34,981.74 in legal fees which M-I has agreed to reimburse Rowan.

[13]   M-I incurred its own legal expenses prior to Masse's
acceptance of M-I's defense, and afterwards in defending El Paso
and Rowan.

the total amount of attorneys' fees without any backup detail. Masse further states that it has filed discovery which still remains unanswered regarding the attorneys' fee issue and asks that this Court deny M-I's motion insofar as the attorneys' fee issues is involved as M-I has not properly supported its motion. This Court agrees with Masse on this point as there remains a problem of proof as to the amount of attorneys' fees at issue. Accordingly,

**IT IS ORDERED** that Masse's **Motion for Partial Summary Judgment (Rec. Doc. 10)** is hereby **GRANTED** in part and **DENIED** in part and that M-I's **Motion for Partial Summary Judgment (Rec. Doc. 17)** is hereby **GRANTED** in part and **DENIED** in part.[14]

New Orleans, Louisiana, this 18th day of March, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[14] Specifically, Masse must indemnify M-I for the money it paid to settled the claims of Johnson on behalf of El Paso, or a total of $30,000. However, Masse is not obligated to indemnify M-I for the money it paid to settled the claims of Johnson on behalf of Rowan. Furthermore, Masse is not required to indemnify M-I for the attorneys' fees incurred by El Paso and Rowan pursuant to the Johnson litigation which M-I has already paid to El Paso in the amount of $58,000 and which M-I has agreed to pay Rowan in the amount of $34,981.75, nor is Mass required to indemnify M-I its own attorneys' fees and costs it incurred in the defense of the Johnson litigation as well as the fees and costs M-I incurred assuming the defense of El Paso and Rowan.

16